# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLAUDIA HARBOURT, et al. | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-14-3211 |
| | : | Civil No. CCB-16-339 |
| | : | |
| PPE CASINO RESORTS MARYLAND, | : | |
| LLC, d/b/a MARYLAND LIVE! | : | |
| CASINO | : | |
| | : | |

## MEMORANDUM

Plaintiffs bring this putative class action against PPE Casino Resorts Maryland, LLC ("PPE"), owner and operator of Maryland Live! Casino.[1]  The plaintiffs allege that PPE failed to pay them for the vast majority of a training course they attended as Casino employees, in violation of the Fair Labor Standards Act ("FLSA") and Maryland wage and hour laws. Pending before the court are the plaintiffs' motions for conditional certification of the FLSA claims and the court's assistance in identifying and notifying similarly situated employees, and for equitable tolling of the FLSA's statute of limitations. Also pending is the plaintiffs' motion for class certification of the state law claims pursuant to Fed. R. Civ. P. 23. The motions have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016).

For the reasons that follow, the motions for equitable tolling and for conditional certification under the FLSA will be denied, but the motion for class certification pursuant to Fed. R. Civ. P. 23 will be granted.

---

[1] The named plaintiffs, including plaintiffs from this action and plaintiffs from *Philip Kroll, et al. v. PPE Casino Resorts, Maryland, LLC*, are Claudia Harbourt, Philip Kroll, Melvin Lorden, Michael Lukoski, Ursula Pocknett, Charles Parker, Nathan Reid, Tyrese Rice, Harvey Robinson, and William Sanders.

**BACKGROUND**

PPE owns and operates Maryland Live! ("the Casino") in Hanover, Maryland. (Compl. ¶

5, ECF No. 1).  In response to a state referendum authorizing casinos to operate table games such

as blackjack, poker, craps, and roulette beginning on April 11, 2013, PPE developed a training

course to train more than 800 people to staff the 150 table games it planned to operate. (*Id.* ¶¶

15–16). Advertised as a free twelve week dealer school to be held in conjunction with Anne

Arundel County Community College, the course was designed to quickly equip prospective

employees to run table games by spring of 2013 and was required for employment at the Casino.

(*Id.* ¶¶ 16–17, 20).

The plaintiffs were among the approximately 1,000 individuals who applied for Casino

positions. (Decl. of Claudia Harbourt ¶¶ 4–5, ECF No. 27-3 (hereinafter "Harbourt Decl."); Decl.

of Michael Lukoski ¶¶ 4–5, ECF No. 27-4 (hereinafter "Lukoski Decl."); Decl. of Ursula

Pocknett ¶¶ 4–5, ECF No. 27-5 (hereinafter "Pocknett Decl."); Decl. of Philip Kroll ¶¶ 4–5, ECF

No. 27-6 (hereinafter "Kroll Decl."); Decl. of Melvin Lorden ¶¶ 4–5, ECF No. 27-7 (hereinafter

"Lorden Decl."); Decl. of Charles Parker ¶¶ 4–5, ECF No. 27-8 (hereinafter "Parker Decl.");

Decl. of Nathan Reid ¶¶ 4–5, ECF No. 27-9 (hereinafter "Reid Decl."); Decl. of Harvey

Robinson ¶¶ 4–5, ECF No. 27-10 (hereinafter "Robinson Decl."). After an interview by Casino

employees, the plaintiffs were asked if they would like to attend a course to become a dealer at

the Casino. (Harbourt Decl. ¶ 5, 9; Lukoski Decl. ¶ 5, 9; Pocknett Decl. ¶ 5, 9; Kroll Decl. ¶ 8;

Lorden Decl. ¶ 9; Parker Decl. ¶ 9; Reid Decl. ¶ 9; Robinson Decl. ¶ 6). Approximately 831

individuals were selected to attend the course, which ran from January 7, 2013, until April 1,

2013. (Compl. ¶¶ 21–22, 24).[2] The course, held at Marley Station Mall, (*id.* at 4, ¶ 18), consisted

of four hours of daily instruction Monday through Friday, offered in four time slots: 8 a.m. to 12

p.m., 12 p.m. to 4 p.m., 4 p.m. to 8 p.m., and 8 p.m. to midnight, (*id.* ¶ 26).

Instruction provided at the dealer school was specific to the manner in which the Casino's

employees were to run table games in the "Maryland Live! way." (Harbourt Decl. ¶ 16, 20;

Lukoski Decl. ¶ 17–18; Pocknett Decl. ¶ 17–18; Kroll Decl. ¶ 17; Lorden Decl. ¶ 17; Parker

Decl. ¶ 18; Reid Decl. ¶ 16; Robinson Decl. ¶ 13). Although the plaintiffs were advised the

course was developed in conjunction with Anne Arundel Community College, the instructors

and course materials were all provided by Maryland Live! (Harbourt Decl. ¶ 19; Lukoski Decl. ¶

17; Pocknett Decl. ¶ 17; Kroll Decl. ¶ 16; Lorden Decl. ¶ 16; Parker Decl. ¶ 17; Reid Decl. ¶ 15;

Robinson Decl. ¶ 12). During the course, the Casino required that attendees complete

employment forms, including W-2 forms and a direct deposit authorization. (Lukoski Decl. ¶ 22;

Pocknett Decl. ¶ 22; Kroll Decl. ¶ 21; Lorden Decl. ¶ 20; Parker Decl. ¶ 22; Reid Decl. ¶ 19).

The paperwork was completed through a human resources department located on site at Marley

Station. (*Id.*). Attendees were required to pay $24 for the Casino to obtain their driving records,

provide their fingerprints and social security numbers, and authorize the Casino to perform

criminal and financial background checks on them. (*Id.*).

Ms. Harbourt attended the dealer school for approximately eight weeks, (Harbourt Decl.

¶ 22); Mr. Parker and Mr. Robinson attended for ten weeks, (Parker Decl. ¶ 20; Robinson Decl. ¶

9); Ms. Pocknett attended for eleven weeks, (Pocknett Decl. ¶ 25); and Mr. Lukoski, Mr. Kroll,

Mr. Lorden, and Mr. Reid completed all twelve weeks of the course (Lukoski Decl. ¶ 31; Kroll

Decl. ¶ 30; Lorden Decl. ¶ 28; Reid Decl. ¶ 26). The plaintiffs who failed to complete the course

---

[2] As previously discussed, (Mem. Granting Def.'s Mot. to Dismiss 2 n.3, ECF No. 10), the complaint's reference to
the course ending on April 14, 2013, is understood to be a typographical error as a twelve-week course beginning on
January 7, 2013, would end by April 1, 2013.

were not paid at all for their attendance; those who completed the course received an hourly wage of $7.25 for the final two days of the school. (Lukoski Decl. ¶ 29; Kroll Decl. ¶ 29; Lorden Decl. ¶ 26; Reid Decl. ¶ 25).

On October 14, 2014, the original three named plaintiffs filed this putative class action asserting violations of the FLSA, 29 U.S.C. §§ 201–209 (2012), the Maryland Wage and Hour Law, Md. Code, Lab. & Empl. §§ 3–401 to –431 (2015) ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code, Lab. & Empl. §§ 3–501 to –509 (2015) ("MWPCL"). PPE moved to dismiss for failure to state a claim on November 11, 2014, and the motion was granted on April 21, 2015.

The plaintiffs appealed, and on April 25, 2016, the Fourth Circuit issued a ruling reversing this court's dismissal and remanding the case for further proceedings. *Harbourt v. PPE Casino Resorts, Maryland, LLC*, 820 F.3d 655, 661 (4th Cir. 2016).

The other seven plaintiffs filed an identical action on February 5, 2016, for the purpose of preserving their FLSA claims under the statute of limitations. (*Philip Kroll, et al. v. PPE Casino Resorts Maryland, LLC*, Civil Action NO. 1:16-cv-00339-CCB, Compl., ECF No. 1). This court granted a motion to consolidate on June 22, 2016. (Order Granting Mot. to Consolidate Cases, ECF No. 23). The plaintiffs filed the present motions on June 24, 2016, two weeks after the Fourth Circuit issued its mandate.

## ANALYSIS

I.   Equitable Tolling

The plaintiffs first petition the court to toll the statute of limitations under the FLSA beginning November 11, 2014, the date the defendant's motion to dismiss was filed. The FLSA has a two-tiered statute of limitations. 29 U.S.C. § 255(a). For ordinary violations there is a two-year statute of limitations. *See* 29 U.S.C. § 255(a); *Desmond v. PNGI Charles Town Gaming,*

*L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011). For "willful" violations there is a three-year statute of limitations. *Desmond*, 630 F.3d at 357. Unlike Rule 23 claims, which automatically toll upon filing of the class action, the limitations period for FLSA collective actions continues to run for each individual plaintiff until he or she files written consent to the suit. 29 U.S.C. § 256(b).

Equitable tolling of the statute of limitations is available when "plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant" or "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). It is meant to be a "rare remedy available only where the plaintiff has 'exercise[d] due diligence in preserving [his or her] legal rights.'" *Cruz*, 773 F.3d at 145–46 (quoting *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)). As a result, the "circumstances under which equitable tolling has been permitted are . . . quite narrow." *Chao*, 291 F.3d at 283.

Courts have equitably tolled the statute of limitations in FLSA actions in cases involving unusual delays in the court's consideration of a motion for conditional certification caused by the procedural posture of the case. *See, e.g.*, *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 28192, at *2 (N.D. W.Va. Jan. 5, 2012) (equitably tolling the FLSA statute of limitations where court delayed ruling on plaintiffs' collective action for five months pending resolution of an FLSA setoff issue) [3]; *Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, 2009 WL 4446539, *21–*22 (D. Ariz. Sept. 30, 2008) (equitably tolling the FLSA statute of limitations where court stayed ruling on plaintiffs' collective action pending determination of defendant's motion to dismiss). Courts also have granted equitable tolling in cases where potential opt-in plaintiffs lack notice of the lawsuit due to circumstances beyond their control. *See Stransky v.*

---

[3] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

*HealthONE of Denver, Inc.*, 868 F.Supp.2d 1178, 1181–82 (D. Colo. 2012) (equitably tolling the FLSA statute of limitations until 90 days after opt-in plaintiffs received notice of the lawsuit where defendant was in sole possession of names and addresses of potential opt-in plaintiffs). In those cases, however, the plaintiffs had exercised due diligence by filing a motion for conditional certification, a motion for equitable tolling, or both.

Courts denying tolling have done so on the basis that the plaintiffs failed to exercise due diligence in preserving their legal rights. *See, e.g.*, *Chao*, 291 F.3d at 283–84 (reversing lower court's granting of equitable tolling upon finding plaintiff sought to avoid "then-known potential consequences of her actions" in failing to exercise due diligence); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2012 WL 4739534 at *6 (E.D. Va. Oct. 2, 2012) (noting that, as defendants did not seek a stay pending the outcome of a motion to dismiss, plaintiffs were free to seek out additional plaintiffs during procedural delay but failed to do so). Courts also have denied tolling on the grounds that procedural delays were not extraordinary in nature. *See, e.g.*, *MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2731227at *2 (D.S.C. July 13, 2011) (denying equitable tolling request because defendant's motion to dismiss was "not out of the ordinary," nor was the four-month time frame of the court's consideration).

In this case the plaintiffs have shown neither due diligence towards preserving the rights of other potential opt-in plaintiffs nor extraordinary circumstances in the litigation process. No motion for conditional certification or equitable tolling was filed between October 14, 2014, when the complaint was filed, and April 21, 2015, when the motion to dismiss was granted within four months of full briefing. A new complaint was filed February 5, 2016, with seven new plaintiffs, but again no motion for conditional certification or equitable tolling followed until

June 2016. And there is no suggestion of misconduct by the defendants such as in *Cruz v. Maypa*, 773 F.3d at 146–47.

Under the FLSA, the filing of the complaint in itself is not enough to permit tolling of potential plaintiffs' claims. Inevitably some plaintiffs' claims may expire before they receive notice, even where conditional class certification is sought and granted at an early stage of the litigation. Given the statutory framework, and that the narrow circumstances under which the Fourth Circuit has permitted equitable tolling have not been shown here, the plaintiffs' motion must be denied.

II.     Conditional Certification under the FLSA

Because the motion for equitable tolling has been denied, and more than three years has passed since the conclusion of the dealer school, the motion for conditional certification must be denied. The named plaintiffs will be permitted to proceed with their FLSA claims.

III.    Class Certification under Rule 23

The plaintiffs seek to certify the following class:

> All persons that attended Defendant's twelve (12) week dealer course at Marley Station between January 7, 2013, the date that the course began, and April 1, 2013, the date the course ended. The putative class consists of all persons that attended the course, regardless of the number of days or weeks attended.

(Pls.' Mot. for Class Certification 3, ECF No. 27). PPE merely objects to the proposed scope of the class, not class certification generally. (Def. Opp'n to Pls.' Mot. for Class Certification 9, ECF No. 28). PPE argues that the class should be limited to persons who completed all twelve weeks of the dealer school, were hired as table game dealers by the Casino, and actually worked as table game dealers at the Casino. (*Id.* at 11).

A district court has "wide discretion" in deciding whether class certification is appropriate. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir.2010) (quoting *Central*

*Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir.1993)) (internal quotation marks omitted). Because "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" the court must engage in a rigorous analysis to determine whether the party seeking certification has "'affirmatively demonstrate[d] his compliance' with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (citation omitted). The inquiry may require the court to "probe behind the pleadings," and "such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id.* (internal quotation marks and citation omitted).

Fed. R. Civ. P. 23 sets out a two-step process for determining whether a class should be certified. First, the class must satisfy the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. If those requirements are met, the class must then satisfy at least one of the three sub-parts of Rule 23(b). *Comcast Corp.*, 133 S.Ct. at 1432. Here, the plaintiffs move for certification by relying on Rule 23(b)(3), which requires both that "[common] questions of law or fact . . . predominate over any questions affecting only individual members" and that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The burden of establishing class status is on the party seeking class certification. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).

A.  Rule 23(a)

Based on the parties' submissions, the proposed class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Each will be addressed in turn.

i.  Numerosity

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Fourth Circuit has held that "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967)). Generally, "classes of at least 40 members [are] sufficiently large to satisfy the impracticability requirement," *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998), and classes "consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical." *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984).

In the present case, there are over 800 members of the proposed class that attended at least part of the Casino's dealer school. PPE does not contest the numerosity requirement. Joinder of such a large number of plaintiffs is impractical; accordingly, the numerosity requirement has been satisfied in this case.

ii.  Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common question is one that can be resolved for each class member in a single hearing," and does not "turn[] on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal quotation marks and citation omitted).

Commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In this case, the proposed class members allege the same injury. Specifically, the plaintiffs claim PPE "failed to

pay the minimum wage to any individual enrolled in its twelve (12) week training course." (Pls.'
Mot. for Class Certification 12). While PPE does not specifically object to commonality, its
argument for limiting the class to persons who completed the dealer course, were hired by the
Casino, and worked for the Casino can be interpreted as an argument against commonality.

The plaintiffs' proposed class of all attendees who completed any portion of PPE's dealer
school satisfies the commonality requirement, however, because all proposed class members
suffered the same alleged injury of non-compensated work. Determining the common question
of law, i.e. whether or not the plaintiffs' and class members' duties constituted compensable
work, will resolve the contentions of each class member, regardless of the amount of time the
member participated in the dealer course. Accordingly, the commonality requirement is satisfied,
and the class will not be limited to those who completed the entirety of the twelve week course.

### iii.   Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of
the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement
determines "whether a sufficient relationship exists between the injury to the named plaintiff and
the conduct affecting the class, so that the court may properly attribute a collective nature to the
challenged conduct." *Bullock v. Bd. of Educ. of Montgomery County*, 210 F.R.D. 556, 560 (D.
Md. 2002) (citations omitted). The class representative "must be part of the class and possess the
same interest and suffer the same injury as the class members" such that plaintiffs can "advance
the same factual and legal arguments." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155
F.3d 331, 338, 340 (4th Cir. 1998).

In this case, the named plaintiffs share the same factual and legal claims as the rest of the
members of the proposed class. Their injury, that PPE did not pay them at least minimum wage

for the entirety of their attendance at the dealer school, is the same as the rest of the proposed

class members. Accordingly, the plaintiffs have established typicality.

iv.   Adequacy of Representation

Rule 23(a)(4) requires that persons representing the proposed class be able "fairly and

adequately to protect the interests" of all members of the class. Fed. R. Civ. P. 23(a)(4). This

prerequisite "serves to uncover conflicts of interest between named parties and the class they

seek to represent." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel.*

*Co. of Southwest v. Falcon*, 457 U.S. 147, 157–58, n. 13 (1982)). For a conflict to defeat a class

certification, it "must be more than merely speculative or hypothetical;" it "must be

fundamental" and "go to the heart of the litigation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d

417, 430–31 (4th Cir. 2003) (internal quotations and citations omitted).

There is no apparent conflict between the interests of the named plaintiffs and the other

class members. The named plaintiffs seek what the other class members would seek: a ruling that

defendant is obligated to compensate participants for their attendance at the dealer school.

Additionally, the named plaintiffs represent the broad range of experiences across class

members, as they present varying levels of completion of the twelve-week course. The named

plaintiffs are adequate representatives of the class.

B.  Rule 23(b)

Having determined that the plaintiffs have satisfied Rule 23(a)'s requirements, the court

now turns to Rule 23(b)(3). To merit certification under Rule 23(b)(3), the plaintiffs must

demonstrate that common issues predominate and that a class action is superior to other forms of

litigation. *See Thorn*, 445 F.3d at 319.

11

"The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)," and requires that common questions of law and fact predominate over any individual issues. *Id.* (citation omitted). It guarantees that the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Further, the predominance inquiry is a qualitative one, a question of whether the complexities of common issues outweigh that of individual issues, even if quantitatively there are more individual issues. *Gunnells*, 348 F.3d at 429. "The superiority requirement ensures that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Thorn*, 445 F.3d at 319 (quoting Fed. R. Civ. P. 23(b)(3)). When making its determination with respect to Rule 23(b)(3), the court must consider:

> [T]he class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

In this case, the common issues of compensation for participation in PPE's dealer school predominate over the individual issues of length of participation. The proposed class of dealer school participants is sufficiently cohesive to warrant class adjudication because, although recovery for each class member will vary, their claims involve almost identical facts and the same legal issues. Additionally, a class action is a superior method for the fair and efficient adjudication of this controversy. With over 800 members of the proposed class, individual adjudication of the legal issues would be duplicative and inefficient. For these reasons, Rule

23(b)(3)'s predominance and superiority requirements are satisfied. Accordingly, the proposed class shall be certified for the MWHL and MWPCL claims.[4]

**CONCLUSION**

For the reasons stated above, the plaintiffs' motions for equitable tolling and conditional certification will be denied. The plaintiffs' motion for class certification will be granted. A separate order follows.

January 23, 2017                                  /S/
Date                                              Catherine C. Blake
                                                  United States District Judge

---

[4] The court may decertify later or create subclasses if necessary, given the differing rates of completion of PPE's dealer school among the certified class. Defendant's impression of the Fourth Circuit's ruling, however, is incorrect to the extent that it assumes the Fourth Circuit decided the "primary beneficiary" issue.